IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AQUAN HILTON, | § | |
| | § | No. 193, 2022 |
| Defendant-Below, | § | |
| Appellant | § | |
| | § | |
| v. | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 2008002632 (N) |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: June 7, 2023
Decided: June 26, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## **ORDER**

This 26th day of June, 2023, after consideration of the parties' briefs, the record on appeal, and the argument of counsel, it appears to the Court that:

1. Aquan Hilton was convicted in the Superior Court of possession of a firearm by a person prohibited and sentenced to 15 years in prison, suspended after 10 years for one year of intensive probationary supervision.

2. Hilton has appealed, arguing that the Superior Court erred when it denied his motion to suppress the evidence collected following what Hilton contends was an unlawful seizure of his person. As will be set forth below, the facts as found by the Superior Court following an evidentiary hearing on Hilton's motion to

suppress do not support his claim. We therefore affirm the Superior Court's judgment of conviction.

3. At approximately one o'clock in the morning of August 7, 2020, Corporal Keith Johnson of the Wilmington Police Department received a cellphone call from a WPD detective. The detective informed him that a tipster had reported that Hilton—an individual with whom the detective was familiar—was "possibly . . . armed . . . in the Eighth Street corridor."[1] Hilton, it was reported, "was wearing a Captain America tee shirt, a blue tee shirt with a red and white big shield in front of the chest."[2]

4. After conducting a DELJIS[3] search that disclosed Hilton's criminal record, Corporal Johnson, joined by two fellow patrolmen, responded to the area described by the detective; there he observed an individual wearing such a t-shirt walking toward the intersection of Eighth and West.

5. According to Corporal Johnson, Hilton was walking with his right-arm pinned to his side and his left-arm swinging freely. Based on his training and experience, Corporal Johnson thought that this manner of walking was consistent with the presence of a gun in the subject's waistband. After spotting Corporal Johnson's parked car, Hilton drastically slowed his forward progress. This

---

[1] App. to Opening Br. at A1.
[2] *Id.* at A2.
[3] "DELJIS" stands for Delaware Criminal Justice Information System.

2

prompted the corporal to exit his vehicle and ask Hilton if the two could talk. Hilton immediately rushed his hands to an object tucked in his waistband and bladed the right side of his body.

6. Fearing that Hilton was armed, Corporal Johnson, according to his suppression-hearing testimony,[4] began to draw his own weapon only to see that Hilton was running away. Seeing this, Corporal Johnson re-holstered his firearm, yelled at Hilton to stop, and pursued on foot. During the chase, Hilton tossed what turned out to be a .40 caliber handgun beneath a nearby parked car.

7. One of the assisting patrolmen caught up with Hilton. Once in custody, Hilton was arrested and charged with drug and weapons offenses, including the possession-of-a-firearm-by-a-person-prohibited charge of which he was eventually convicted.[5]

8. Before trial, Hilton moved to suppress all evidence following his detention, arguing that the Wilmington police had violated his Fourth Amendment right to be secure from unreasonable seizures. The gravamen of Hilton's complaint was that the police officers lacked a reasonable articulable suspicion that he was engaged in unlawful behavior and that consequently the officers were not justified in seizing him. According to Hilton, he was seized within the meaning of the Fourth

---

[4] App. to Opening Br. at A7.
[5] During a search incident to arrest, Corporal Johnson discovered marijuana, crack cocaine, a digital scale, and $2,100 in cash on Hilton's person.

3

Amendment "when [Corporal] Johnson arrived on scene with two additional officers, got out of his car and immediately 'asked' the defendant if he [w]ould talk to him and shortly thereafter began to draw his firearm."[6]

9. An officer "may detain an individual for investigatory purposes for a limited scope and duration" where the stop "is supported by a reasonable and articulable suspicion of criminal activity."[7] "Although reasonable, articulable suspicion requires less than probable cause and 'considerably less than preponderance of the evidence,'[8] the officer 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'"[9] "A determination of reasonable suspicion must be evaluated in the context of the totality of the circumstances as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[10]

10. In an oral ruling, the Superior Court rejected Hilton's claim, finding that the suppression-hearing evidence supported a finding of reasonable articulable suspicion:

---

[6] Opening Br. at 12.

[7] *Jones v. State*, 745 A.2d 856, 861 (Del. 1999).

[8] *State v. Murray*, 213 A.3d 571, 579 (Del. 2019) (quoting *Woody v. State*, 765 A.2d 1253, 1263 (Del. 2001)).

[9] *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).

[10] *Diggs v. State*, 257 A.3d 993, 1004 (Del. 2021).

4

There was a clothing description and an area, so the officer had narrowed his search to someone that with [sic] certain clothing in a certain area. The officer testified that he saw someone matching that description in the area. And at the time he saw the suspect his right arm was not swinging. And as soon as he saw that the uniformed officer was approaching, he started looking right and left, his pace slowed; and then when the officer exited the vehicle for contact and spoke to the defendant, the testimony was that the defendant clutched his waistband with both hands on the right side and then ran eastbound. Prior to running, he had bladed his body to conceal his right side. . . . [U]nder those circumstances, I find that there was reasonable articulable suspicion to stop the defendant.[11]

11. We note that the court did not make a finding as to whether Corporal Johnson had reached for his weapon before Hilton's flight. But even assuming Hilton's best case on appeal—that Corporal Johnson did, in fact, begin unholstering his firearm, thus effecting a seizure, before Hilton fled[12]—we are yet satisfied that the record and the Superior Court's factual findings, to which we are required to give deference,[13] support a determination that reasonable articulable suspicion existed.

12. The WPD received a tip that a person prohibited from carrying a firearm may have been in possession of one. When Corporal Johnson arrived at the location identified by the tipster, he observed a person matching the subject's

---

[11] App. to Answering Br. at B33, B35.
[12] *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (holding that the "display of a weapon by an officer" generally amounts to a seizure).
[13] *See Flowers v. State*, 195 A.3d 18, 23 (Del. 2018) ("When we are reviewing the denial of a motion to suppress evidence based on an allegedly illegal stop and seizure, we conduct a *de novo* review to determine whether the totality of the circumstances, in light of the trial judge's factual findings, support a reasonable and articulable suspicion for the stop.").

description walking toward him in a manner that, to the officer, suggested that the person was carrying a weapon in his waistband. It was late at night in downtown Wilmington and the individual reacted to the police presence, slowing his pace considerably and looking to his right and left, prompting Corporal Johnson to exit his vehicle. Up to that point, Corporal Johnson had not seized Hilton within the meaning of the Fourth Amendment; his interaction with Hilton, to the extent that there had been any, had not gone beyond the type of consensual encounter or mere inquiry we described in *Diggs v. State*.[14] At that moment, however, Hilton bladed his body away from the corporal and appeared to grab at an object in his waistband. These actions, taken in their totality and viewed through the eyes of a reasonable, trained police officer, gave rise to a reasonable articulable suspicion that Hilton was armed and justified Corporal Johnson's response. Hence, the Superior Court did not err when it declined to suppress the evidence Hilton discarded as he fled from the police and the evidence found on his person when he was apprehended.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[14] 257 A.3d 993, 1003–04 (Del. 2021).